**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **WINSTON AVERY TERRY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 1:16-CV-00859-LY** |
| **BRANCH BANKING AND TRUST** | § | |
| **COMPANY, ET AL.** | § | |
| | § | |
| **Defendants.** | § | |

<u>**DEFENDANT BB&T'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**</u>

Defendant Branch Banking and Trust Company ("BB&T") files its Motion to Dismiss *Plaintiff's Second Amended Complaint* [Dkt. No. 53] for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

## I.    <u>Summary of the Motion</u>

1.      Plaintiff Winston Avery Terry originally sued BB&T (among other defendants) to stop foreclosure on his property scheduled for August 2, 2016, despite his default in paying the loan.  Now, having filed his third conclusory and frivolous complaint in this case, Terry asks the Court to give him a free house, cancel his debt, and award him more than $1,000,000 in damages.  Terry argues he unilaterally created an "accord and satisfaction" of his accelerated loan by sending a new promissory note to BB&T, that he claims BB&T accepted, first by not sending it back and later by returning his promissory note to him after he demanded its return. Terry also vaguely alleges BB&T violated the FDCPA.  Terry further seeks to hold BB&T and its CFO personally liable and sues BB&T's counsel for actions taken in representing BB&T.

4843-2608-4416 v6
2814465-000515

2.      The Court should dismiss Terry's Second Amended Complaint in its entirety for

failure to state a claim because:

- Terry's quiet title claim fails because Terry has not paid the loan, he did not tender payment, there was no accord and satisfaction, and Terry fails to allege facts showing he has superior title.

- Terry's conversion claim fails because Terry voluntarily sent the Promissory Note to BB&T, authorized BB&T to keep the Promissory Note, and then BB&T returned the Promissory Note when Terry demanded the return.

- Terry fails to state a claim for civil conspiracy because Terry fails to identify an agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means.

- Terry fails to state any viable claim against Mr. Bible, Baker Donelson, and Ms. Robinson, and Terry's claims against BB&T's attorneys are barred by the attorney immunity doctrine.

- Terry's FDCPA claims fail because BB&T is not a debt collector, and Terry pleads only conclusions and recitations of the statute without any factual support.

- Terry's RESPA claim (if any asserted) fails because Terry fails to state facts to support a RESPA claim and fails to allege how he was damaged by an alleged failure to respond to a QWR.

- Terry's declaratory claim must be denied because he does not have a viable underlying cause of action to support the declaratory judgments sought.

## II.      Background

3.      On or about September 4, 2013, Terry borrowed $114,880 and executed a Note

(the "Note") to finance his purchase of the property located at 14505 Joy Lee Lane, Manor,

Texas 78653 (the "Property").  Second Am. Compl. at Ex. 9.  The Note is secured by a Deed of

Trust, granting a security interest in the Property to secure repayment of the Note.  *Id.* at ¶¶ 2,

136.

4.      Terry admits he defaulted in paying the loan after he became indigent and could

not make his payments.  *Id.* at ¶ 138.  After foreclosure proceedings began, on July 12, 2016,

Terry filed his original complaint to stop foreclosure.  Dkt. No. 1.  Terry's original complaint

4843-2608-4416 v6
2814465-000515

alleged numerous frivolous claims against BB&T, Mackie, Wolf, Zientz & Mann, P.C. ("Mackie Wolf"), and others.[1] *Id.*

5.      Terry filed a First Amended Complaint on November 30, 2016, dropping his frivolous standing-related claims and numerous statutory claims, retaining other statutory claims, and focusing on his new accord and satisfaction theory (discussed in greater detail below). BB&T moved to dismiss the claims asserted in the First Amended Complaint [Dkt. 33], and Terry then sought leave to supplement with additional theories and arguments [Dkt. 46].   For clarity, the court ordered Terry to file a Second Amended Complaint containing only the claims asserted in the First Amended Complaint and Supplemental Complaint.

6.      On January 3, 2017, Terry filed his Second Amended Complaint, alleging claims for (1) quiet title, (2) declaratory judgment; (3) conversion; (4) civil conspiracy; (5) Federal Debt Collection Practices Act claims ("FDCPA"), and (5) potentially a claim under the Real Estate Settlement Procedures Act ("RESPA").   In his Second Amended Complaint, Terry alleges that by mailing a new promissory note to BB&T, Terry unilaterally created an "accord and satisfaction" of the loan.   Terry asks the court to declare him the owner of the Property and cancel the deed of trust lien, despite the fact he has not paid the loan. *See* Second Am. Compl. at ¶¶ 175-176.   Terry also alleges that BB&T and its CFO, Daryl Bible converted the Promissory Note. *Id.* at 206.   Terry further alleges that all Defendants committed civil conspiracy by conspiring to "deprive Plaintiff ('Terry') of his property rights in [the Promissory Note] and also the real property/house." *Id.* at ¶ 212.

---

[1] On October 5, 2016, Terry dismissed his claims against MERS, Ginnie Mae REMIC Trust 2013-144, and Network Funding, L.P.  Dkt. No. 28.  BB&T characterizes the initial pleading as frivolous for the reasons stated in its first motion to dismiss.

4843-2608-4416 v6
2814465-000515

7.      As a result, Terry alleges that he is entitled to have the court quiet title in Terry and enter a declaratory judgment that Defendants' lien, is invalidated, among other things.  *Id.* at ¶¶ 184-198.

8.      All of Terry's claims fail and must be dismissed because he has not paid off his debt, nor has he pleaded any plausible claim, despite three opportunities to plead his case.

### III.    <u>Arguments and Authorities</u>

#### A.    **Standard of Review**

9.      This Court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if Terry's factual allegations do not show a right to relief that is plausible and above mere speculation.  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."[2]  To avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[3]  The "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ."[4]  The court will not accept as true conclusory allegations or unwarranted deductions of fact.[5]

#### B.    **Terry's quiet title claim fails.**

10.     Under Texas law, to prevail in a suit to quiet title, the plaintiff must prove: (1) his right, title, or ownership in real property; (2) that the defendant has asserted a "cloud" on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid,

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).
[3] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994)).
[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[5] *Collins,* 224 F.3d at 498.

4843-2608-4416 v6
2814465-000515

would affect or impair the property owner's title; and (3) that the defendant's claim or encumbrance is invalid.[6]

11.     Here, Terry has failed to allege facts to support a quiet title claim, nor any facts to support his theory that BB&T's lien is invalid.  Terry admits that he executed the Note and Deed of Trust and that he defaulted in making payments owed under the Note but alleges he satisfied his loan by sending the Promissory Note to BB&T and thereby created an accord and satisfaction. *Id.* at ¶¶ 136, 138, 175-176.

### 1.     *Offering a new promissory note is not paying off a loan.*

12.     It is undisputed that BB&T's scheduled foreclosure prompted Terry to file his lawsuit, and therefore, the debt had been accelerated per the Deed of Trust.[7]  Accordingly, since the debt had been accelerated, Terry was no longer contractually permitted to make installment payments but had to pay the full debt owed under the Note.  In the Note, Terry borrowed and promised to repay the loan, *in U.S. dollars*, $114,880, plus interest to the *order* of the Lender.[8]  Rather than pay in U.S. Dollars, with an instrument paid to the order of BB&T, Terry instead prepared a new Promissory Note that he sent to BB&T.[9]  *Id.* at ¶¶ 60-62; Ex. 2.   The new Promissory Note does not contain an order directing any entity (including Terry) to pay any amount to BB&T.[10]  The Promissory Note states that "*the payment will be made … in monthly installments of $1400 (Fourteen Hundred Dollars) per month, on the 7th (Seventh) day of every consecutive month until the obligation has been fulfilled*."  The new Promissory Note amounts to

---

[6] *Warren v. Bank of Am., N.A.,* 566 Fed.Appx. 379, 382 (5th Cir. 2014).
[7] The acceleration is evidenced by Terry's pleadings, the request for TRO he filed to stop foreclosure, and the notice of foreclosure sale he attached to his Complaint.  *See also* Second Am. Compl., Ex. 9, Deed of Trust, ¶ 9 (Lender may require immediate payment in full of all sums secured by the Security Instrument if Borrower defaults in failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment) and ¶ 18 (foreclosure proceedings and power of sale following acceleration of the loan).
[8] *See* Second Am. Compl., Ex. 9, Note, ¶ 2.
[9] *Id.* at Ex. 2.
[10] "Order" means a written instruction to pay money signed by the person giving the instruction.  *See* Tex.Bus.&Com. Code § 3.103(8).

4843-2608-4416 v6
2814465-000515

nothing more than Terry's promise to pay, *in the future and not immediately*, installment payments that BB&T must monthly retrieve from Terry's house. Further, Terry was advised that if he wanted to pay off his debt, he needed to make his payment by wire or certified funds.[11] Second Am. Compl. at Ex. 4. Terry does not allege he sent a bank wire of money and Terry's Promissory Note does not guarantee the availability of immediate payment in full to BB&T. Terry's promissory note is nothing more than a promise to pay in the future.

### 2. There was no accord and satisfaction or discharge of the debt.

### a. Texas Business and Commerce Code/Uniform Commercial Code (UCC)

13. Contrary to Terry's conclusory allegations, Terry failed to tender payment pursuant to section 3.603 of the Texas Business and Commerce Code.[12] Tender means the unconditional offer by a debtor or obligor to pay the amount due on a specific obligation.[13] The obligor must offer to pay the debt, produce the funds, and relinquish them for a sufficient time and under such circumstances as to let the creditor take possession without special effort.[14] Terry's Promissory Note is not an unconditional tender of the amount due. The amount due was the total debt. Terry tendered only a promise to pay future installment payments, conditioned on the "Terms and Conditions." Terry did not produce the funds to BB&T, nor does he allege that he did. Terry did not produce the funds or relinquish them under circumstances to let BB&T take money without special effort; to the contrary, one such condition was that BB&T would have to retrieve monthly payments at Terry's residence.

---

[11] *Richard v. Deutsche Bank Nat. Trust Co.*, 3:09-CV-00123-SI, 2012 WL 1082602, at *3 (D. Or. Mar. 30, 2012) (Certified funds is a payment method in which a third-party institution, rather than the payor, guarantees, or certifies the availability of funds to the payee).

[12] Terry references the UCC 3-603, which was codified in the Texas Business and Commerce Code § 3.603. Thus, BB&T cites to the Texas Business and Commerce Code.

[13] *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex.1963); *see also* Tex. Bus. & Com. Code §3.603(a).

[14] *Id.*

14.     Terry argues that "BB&T and Bible's receipt, continued possession, use, sale, trade, unauthorized return and/or hypothecation of ('THE FUNDS'); and/or those Defendant's failure/refusal to send an agent to pick up the monthly payments securing ('THE FUNDS') constitutes dishonor equating to full 'Satisfaction' of the original 'Mortgage Agreement' according to the U.C.C. 3-603 'Tender of Payment.'" Terry's Second Am. Compl. at ¶ 70.  This pleading similarly fails to establish Plaintiff's right to quiet title.  If the creditor refuses tender, the obligor has no liability for *interest* after the due date on the amount tendered.[15]  However, a refusal does not extinguish the debtor's liability for the principal outstanding debt.[16]  Here, not only was there no tender by Terry, a refusal would not result in discharge of the entire debt under §3.603.

15.     Further, Terry wholly fails to plead any facts to support an accord and satisfaction.  According to Texas Business and Commerce Code § 3.311, Terry must plead and prove that (1) he, *in good faith*, tendered an instrument to BB&T as full satisfaction of the claim; (2) the amount of BB&T's debt was unliquidated or subject to a bona fide dispute; and (3) BB&T obtained payment of the instrument.[17]

16.     Terry fails to plead  that the Promissory Note sent to BB&T was tendered in good faith in full satisfaction of the claim.   Good faith, as defined in the Texas Business and Commerce Code requires "not only honesty in fact but also 'observance of reasonable commercial standards of fair dealing.'"[18]  Terry's tender of the Promissory Note is not in accordance with reasonable commercial standards.  Terry's attempt to pay an accelerated debt with a new promissory note, payable in monthly installments to be retrieved by the lender at

---

[15] Tex. Bus. & Comm. Code § 3.603(c).
[16] *Guaranty Bank v. Thompson*, 632 S.W.2d 338, 340 (Tex.1982).
[17] Tex. Bus. & Com. Code § 3.311(a)
[18] Tex. Bus. & Com. Code § 3.104, cmt. 4.

4843-2608-4416 v6
2814465-000515

Terry's house, is contrary to reasonable commercial standards.[19]  Further, the promise to pay appears to be entirely illusory, as the new Promissory Note states that non-return, acceptance, deposit, or trade "terminates the obligation herein."[20]  By the Promissory Note's own terms, if the Promissory Note is accepted, Terry no longer has an obligation to pay monthly payments.[21]  Terry fails to plead any facts from which the court could conclude he tendered the Promissory Note in good faith.  It is insufficient for Terry to allege the conclusion that he sent his new Promissory Note in "good faith", nor must the Court accept such conclusions as true.

17.    Terry similarly fails to plead that the amount of the claim was unliquidated or subject to a bona fide dispute.  The amount of the stated debt Terry owes on the Note is liquidated, and Terry does not plead otherwise.  Terry does allege, in conclusory fashion, that the "Mortgage Agreement/ Note" is the subject of a dispute (Second Am. Compl. ¶63), but he fails allege any facts indicating the *amount of the debt* was/is disputed in any way.  Terry's vague reference to having some sort of dispute about the Loan with BB&T is insufficient to state a claim.

18.    Finally, Terry also does not plead that BB&T obtained payment of the instrument, and to the contrary alleges that BB&T has failed to pick up the first monthly installment payment

---

[19] *See* Second Am. Compl., Ex. 2. The Note requires Terry to make payments at the place Lender designates in writing to Terry.  *See* Second Am. Compl., Ex. 9, ¶4.

[20] *Id.*

[21] *See* the website of Private Bankers Bank National Association, the entity allegedly "issuing" the promissory note Terry relies on (but which is not National Association governed by the OCC), www.pbnba.com. The site contends that "[i]n accordance with **31 U.S.C. §5103 and 18 USC §8,** such Promissory Note instruments are **'national bank currency'** and thereby *'coin or currency of the United States'* by statutory definition and can be issued by Private Bankers who are lifetime banking members of the **Private Bankers National Banking Association, PBNBA. These PBNBA preprocessed promissory notes are *'THE EQUIVALENT' OF MONEY* as per 12 USC §1813 (L) and must be accepted by all banks and financial institutions as payoff, set off, discharge, and full settlement of all debts and loans. So become a member and join the ranks of hundreds of Private Bankers National Banking Association family members and pay off your debts without using your energy or labor as collateral. Become a Private banker today at www.PBNBA.com. Let's beat the banks at their own game."**

4843-2608-4416 v6
2814465-000515

scheduled by the Promissory Note.  *Id.* at ¶ 70.  Therefore, there has been no accord and satisfaction of the debt, and Terry failed to plead facts supporting any element of the claim.

### b.    Accord and Satisfaction as a Common Law Defense

19.    To the extent Terry is attempting to allege a common law accord and satisfaction, this theory fails as well.  Accord and satisfaction is a defense that rests upon a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted.[22]  The party asserting accord and satisfaction must prove the parties agreed that the amount paid by the debtor to the creditor was in full satisfaction of the entire claim.[23]  The parties' minds must meet.[24]  The "accord" is the new contract in which the parties *mutually* agree that one party will give and the other will accept something that is different from what each expected from the old contract.[25]  The "satisfaction" is the actual performance of the new agreement.[26]

20.    Terry fails to plead any facts indicating he and BB&T made a new agreement to accept Terry's new Promissory Note in place of the existing loan agreement.  The Note and Deed of Trust do not authorize Terry to unilaterally change the payment or other terms.  Any contract modifying the Note and Deed of Trust is subject to the statute of frauds and must be in writing to be enforced.[27]  Terry does not plead that there was a written agreement to modify the Note and Deed of Trust, and therefore his Promissory Note does not constitute an accord.  Further, Terry's pleadings make clear there was no meeting of the minds, assent, or new agreement formed. Terry's Exhibits 4 and 5 reflect BB&T's unequivocal rejection of Terry's new Promissory Note.

---

[22] *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969) (citing *Industrial Life Insurance Co. v. Finley*, 382 S.W.2d 100 (Tex. 1964)).
[23] *Id.*
[24] *Id.*
[25] *Baylor Health Care System v. Employers Reinsurance Corp.*, 492 F.3d 318, 321 (5th Cir. 2007).
[26] *Id.*
[27] *Bracken v. Wells Fargo Bank, N.A.*, 13 F. Supp.3d 673, 682 (E.D. Tex. 2014).

4843-2608-4416 v6
2814465-000515

21.     Terry's Promissory Note does not constitute a satisfaction because Terry's Promissory Note is not a payment, but instead just a promise to pay in the future.

### 3.     *Terry fails to allege facts showing superior title, that BB&T has asserted any claim that would affect or impair his title, or that BB&T's lien is invalid.*

22.     Terry admits he borrowed money and executed the Note and Deed of Trust. Second Am. Compl., ¶¶ 136-137.  Because he did not pay the loan, he is not entitled to have his deed of trust canceled and has not alleged sufficient facts for the court to conclude that title should be quieted in him.

23.     Regarding the July 2016 notice of sale and the notice of default, Terry does not plead that the notice of sale and notice of default are invalid, nor that the notices conveyed an interest in or constitutes a cloud on title.  A notice of sale is nothing more than a statutorily-required notice of a scheduled foreclosure sale, following Terry's admitted default in paying the loan.  Similarly, a notice of default is merely the contractual and statutory notice given to debtors, who have defaulted in paying their loans, as Terry admits he did.  BB&T holds equitable interest in the Property pursuant to the deed of trust and vendor's liens.  After Terry defaulted, BB&T was therefore entitled to initiate foreclosure proceedings pursuant to the Note and Deed of Trust and record a statutorily-required notice of sale.  Because Terry cannot prove the strength of his own title and because the notices of sale and default did not cloud the title, Terry has failed to state a viable quiet title claim.

## C.     Terry's conversion claim fails.

24.     Terry alleges BB&T and Mr. Bible converted the Promissory Note.  Second Am. Compl. at ¶ 206.  To establish conversion claim, a plaintiff must plead and prove that: (1) the plaintiff owned or had possession of the property; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent

4843-2608-4416 v6
2814465-000515

with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendants refused to return the property.[28]

25.     Terry has wholly failed to identify any facts indicating that BB&T "unlawfully and without authorization assumed and exercised control" over the Promissory Note to the exclusion of Terry's rights.   To the contrary, Terry's complaint makes clear that Terry *voluntarily* sent the Promissory Note to Defendant requesting BB&T accept the Promissory Note as payment on his existing loan.[29]   Further, BB&T rejected the Promissory Note twice (i.e., the first time when Terry sent it to BB&T's counsel, *see* Second Am. Compl. Ex. 4).   Despite the first rejection, Terry still chose to send the Promissory Note to BB&T again, directly to its address (*see* Second Am. Compl., Ex. 5).   Further,  Exhibit 13 to the Complaint includes a note from Terry directing BB&T to "Please sign and return copies. **Keep originals**."   Accordingly, there are no facts from which the court could conclude that BB&T unlawfully and without authorization assumed and exercised control over the Promissory Note.

26.     Further, BB&T returned the Note to Terry twice.   Terry admits that after he sent the Promissory Note to Baker Donelson,  Terry "received the full return by Baker of his mailing contents inclusive of each and every …item."   Second Am. Compl., ¶ 135.   Then, after Terry sent the Promissory Note directly to BB&T, with directions to keep the original, Terry subsequently demanded return of the Promissory Note by e-mail to BB&T's counsel.   Second Am. Compl. at Ex. 6.   Terry sent his e-mail on Saturday evening, November 26, 2016, and since Saturday is not a business day, the request was addressed on Monday, November 28th.   The Promissory Note was obtained from BB&T and sent to Plaintiff on December 1, 2016, three

---

[28] *Trevino & Associates Mechanical, L.P. v. Frost National Bank*, 400 S.W.3d 139, 148 (Tex. App.--Dallas 2013, no pet.) (citing *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365-66 (Tex. App.--Dallas 2009, pet. denied)).
[29] According to Terry, he wanted BB&T to accept the Promissory Note, with the expectation that BB&T would send someone to Terry's house every month to pick up a payment of $1,400.  See Second Am. Compl. at Ex. 2.

4843-2608-4416 v6
2814465-000515

business days later.[30]  Accordingly, based on the facts alleged by Terry, his conversion claim is not viable and fails as a matter of law because, after demand, BB&T promptly returned the Promissory Note to Terry.  *Id.* at ¶¶34-36.

**D.  Terry's civil conspiracy claim fails because he fails to state a claim.**

27.  Terry alleges that BB&T's attorneys (Baker Donelson and Ms. Robinson) conspired with BB&T and Mr. Bible to convert the Promissory Note and to mislead Plaintiff about the validity of a legal issue (i.e., whether Terry's attempted accord and satisfaction is legally valid).  *See*  Second Am. Compl. at ¶¶ 212 - 218. An actionable civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or a lawful purpose by unlawful means.[31]  The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.[32]

28.  Terry's conspiracy claim fails because his conclusory pleading fails to identify any agreement among BB&T, Mr. Bible, Baker Donelson, and Ms. Robinson to accomplish an unlawful purpose, nor a lawful purpose by unlawful means.[33]  Terry fails to allege any unlawful, overt acts by BB&T, Mr. Bible, Baker Donelson, or Ms. Robinson.  Terry fails to identify any damages he allegedly suffered as a proximate result of the alleged actions.  As discussed in the preceding section, Terry fails to allege any facts indicating a conversion occurred, nor any facts indicating anyone conspired to convert the Promissory Note. To the contrary, the facts indicate BB&T rejected the Promissory Note, first on September 29, 2016, when BB&T's counsel sent

---

[30] Ex. A, Second Return of Plaintiff's Promissory Note.  Plaintiff has made the Promissory Note and return of the same a central issue to his complaint; thus BB&T may attach the return of Promissory Note to its Motion.  *See Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-499 (5th Cir. 2000)).  *See also* Second Am. Compl. at ¶¶34-36.
[31] *ERI Consulting Eng'res, Inc. v. Swinnea,* 318 S.W.3d 867, 881 (Tex. 2010).
[32] *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983).
[33] *ERI Consulting,* 318 S.W.3d at 881.

4843-2608-4416 v6
2814465-000515

the Promissory Note back to Terry[34] and again on November 18, 2016.[35]   Further, as stated above, upon Terry's demand for the return of the Promissory Note, it was returned to him on December 1, 2016.[36]

29.     With regard to Terry's contention that BB&T and its lawyers conspired to "confuse, deceive, mislead, or defraud" Terry out of exercising his rights, titles, and/or interests in the [Promissory Note], Terry fails to allege any facts to support a conspiracy.  He fails to allege any false statement of material fact that he alleges anyone told him. He fails to identify any alleged unlawful, overt act by BB&T, Mr. Bible, Baker Donelson, or Ms. Robinson that forms the basis of this claim.  It certainly is not unlawful to inform an adverse party that one rejects his legal theory and unilateral attempts to modify a loan.  Terry fails to allege any facts that counsel representing her client is involved in a conspiracy and fails to allege any facts supporting a conspiracy claim.

## E.     Terry fails to plead any facts to support a claim against Daryl Bible, Baker Donelson, or Kari Robinson.

### 1.     Terry states no facts to support a claim against BB&T's CFO.

30.     Terry fails to identify any facts indicating BB&T's CFO knows anything about Terry's Promissory Note and fails to cite any factual basis for his harassing and frivolous allegations.  Terry cites no facts to support his conclusory assertions that Mr. Bible "was/is the current recipient/dishonoring party of [the Promissory Note]," that Mr. Bible is a "material participant," or that Mr. Bible ever used, sold or traded the Promissory Note.  Second Am.

---

[34] *See* Second Am. Compl., at Ex. 4.  Accordingly, Plaintiff knew the Promissory Note was rejected before mailing it to BB&T the second time in October 2016.  Plaintiff then voluntarily sent the Promissory Note to BB&T in October, despite knowing it had already been rejected.  Plaintiff included a copy of the Promissory Note and asked BB&T to sign and return the copies and keep the originals.  Second Am. Compl. at Ex. 13.  Accordingly, BB&T advised Plaintiff on November 18 that it would not sign or return the requested documents.  *Id.* at Ex. 5.
[35] Second Am. Compl. at Ex. 5.
[36] Ex. A, attached hereto.

Compl., ¶ 18. Terry's claims against the CFO are baseless and facially implausible, as even Terry admits that the Promissory Note was returned to him after he demanded the return, which would be an impossibility if Mr. Bible had sold or traded the Promissory Note. Second Am. Compl., ¶ 36. Terry simply has no factual basis for any of his allegations against Mr. Bible.

### 2. Terry's claims against Baker Donelson and Kari Robinson are barred by the attorney immunity doctrine, and Terry fails to allege any plausible claim.

31. Terry's claim against Baker Donelson and Ms. Robinson for allegedly conspiring with their clients[37] are equally conclusory, baseless and are barred by the attorney immunity doctrine. "Texas courts have long held that attorneys cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions taken in connection with representing a client."[38] "This rule recognizes that '[i]f an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest.'"[39] "To determine whether immunity attaches, courts focus on the type or kind of conduct in which the attorney is engaged to determine whether the conduct is actionable or merely undertaken in the representation of the client."[40]

32. All of Terry's claims against Baker Donelson and Ms. Robinson are based on their representation of BB&T in this lawsuit and are brought to harass Baker Donelson and Ms. Robinson. Second Am. Compl. at ¶¶ 45-49, 52-53, 73-95, 212-218. Terry speculates that Baker

---

[37] Terry alleges that Baker Donelson and Ms. Robinson conspired with their own clients, BB&T and Mr. Bible, to convert the Promissory Note and to "confuse, deceive, mislead, or defraud" Terry out of exercising his rights, titles, and/or interests in the [Promissory Note]. Second Am. Compl. at ¶ 213.
[38] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015); *See also Gaia Environmental, Inc. v. Galbraith*, No. 14-13-00571-CV, 2014 WL 4415221, at *4 (Tex.App.-Houston [14th Dist.] Sept. 9, 2014, no pet. h.) (quoting *Sacks v. Zimmerman*, 401 S.W.3d 336, 340 (Tex.App.-Houston [14th Dist.] 2013, pet. denied) (citing *James v. Easton*, 368 S.W.3d 799, 802 (Tex.App.-Houston [14th Dist.] 2012, pet. denied))).
[39] *Gaia*, 2014 WL 4415221, at *4 (quoting *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 440 (Tex.App.-Houston [14th Dist. 2000, pet. denied)); *see also Rhodes Colleges, Inc. v. Johnson*, No. 3:10-cv-0031-D, 2012 WL 627273, at *3-5 (N.D. Tex. Feb. 27, 2012) (citing Texas law).
[40] *Id.* (citing *Chapman*, 32 S.W.3d at 440-41).

Donelson and Ms. Robinson lent aid and encouragement to BB&T and had "frequent communications, counsel [and] advisement" (presumably with BB&T). *Id.* at ¶ 217. None of those allegations support any unlawful conspiracy against Plaintiff. The only discernible complaint Terry recites concerns Ms. Robinson's letters to Terry conveying BB&T's position about the Promissory Note, i.e., indicating the Promissory Note was rejected and that BB&T rejects Terry's "efforts to impose unilateral, new terms on the existing note and loan."[41] It is clear from the letters that Ms. Robinson is conveying BB&T's position in the lawsuit and responding to Terry in her capacity as counsel to BB&T. Second Am. Compl. at Exs. 4, 5.[42] Immunity clearly attaches to the acts Terry complains of, and thus, Terry cannot bring claims against Baker Donelson and Ms. Robinson. Although Texas courts have recognized an exception to the privilege when an attorney knowingly commits a fraudulent act outside the scope of his legal representation of the client,[43] Terry does not plead that Ms. Robinson or Baker Donelson acted fraudulently outside the representation of BB&T, but instead alleges that Baker Donelson and Ms. Robinson were working with BB&T as its counsel. Any such allegations of fraud on the part of Ms. Robinson or Baker Donelson would have to pleaded with particularity to satisfy the pleading requirements of Rule 9, and Terry wholly fails to identify any fraudulent actions or false, misleading material statements of fact by either Baker Donelson or Ms. Robinson.

---

[41] Second Am. Compl, ¶¶ 84, 217.

[42] *See also* Ex. A, attached hereto.

[43] *See Toles v. Toles,* 113 S.W.3d 899, 911-13 (Tex.App.-Dallas 2003, no pet.); *Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex.App.-Houston [1st Dist .] 1985, no writ).

4843-2608-4416 v6
2814465-000515

**F.      Terry's FDCPA claims must be dismissed for failure to state a claim.**

33.      Terry fails to plead facts sufficient to show a plausible right to relief under the FDCPA.  *See, e.g.*, Second Am. Compl., ¶¶ 200-203.  Terry's allegations, however, are nothing more than conclusory, boilerplate allegations that lack any factual material sufficient to show a plausible right to relief under the statute.

   *1.      Terry fails to plead any facts supporting the allegation that Defendants are "debt collectors."*

34.      Terry fails to plead facts sufficient to show that BB&T is a "debt collector."[44] Under section 1692a(6), a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*."  Terry fails to allege any facts showing BB&T is a debt collector under the statutory definition.  Further, Terry produced a copy of the Note which shows the endorsement to BB&T, and the Assignment shows the lien is held by BB&T.  *See* Second Am. Compl. at Ex. 9.  Accordingly, based on Terry's own pleadings, BB&T cannot be collecting a debt *owed to another* if it is the holder of Terry's note.  For this reason alone, dismissal of Terry's FDCPA claims is appropriate.[45]

   *2.      Terry fails to allege facts supporting any of the claimed violations.*

---

[44] *See* 15 U.S.C. § 1692c(a) (…a *debt collector* may not communicate with a consumer in connection with the collection of any debt…); 15 U.S.C. § 1692d ("A *debt collector* may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."); 15 U.S.C. § 1692e ("A *debt collector* may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); 15 U.S.C. § 1692f ("A *debt collector* may not use unfair or unconscionable means to collect or attempt to collect any debt."); 15 U.S.C. § 1692g ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a *debt collector* shall…send the consumer a written notice containing…") (emphasis added in all).

[45] *See Bent v. Mackie Wolfe Zientz & Mann, P.C.*, No. 3:13–CV–2038–D, 2013 WL 4551614, at *3 (N.D. Tex. Aug. 28, 2013) (finding the plaintiffs' failure "to assert facts sufficient to show that Defendant was a debt collector because it was either engaged 'in [a] business the principal purpose of which [was] the collection of ... debts' or it 'regularly collect[ed] or attempt[ed] to collect ... debts owed or due or asserted to be owed or *due another*'" was fatal to their FDCPA claims (emphasis in original)).

16

35.     Furthermore, Terry's claims also fail because he does not plead any facts sufficient to state a claim under the FDCPA.  Terry alleges that BB&T violated 15 U.S.C. 1692g by "failing or refusing to first validate the information requested by ('Terry'), by continuing to report negatively against ('Terry')''s creditworthiness without first investigating, and by failing or refusing to conduct an investigation."  Second Am. Compl. at ¶ 202.  Section 1692g(a) requires the creditor to give the notice of the debt "within five days after the initial communication with a consumer in connection with the collection of any debt."   Section 1692g(b)  provides that if the consumer notifies the debt collector in writing within the 30 day period after the debt collector provides the notice of the debt, that the debt or any portion is disputed or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt or any disputed portion thereof, until the debt collector obtains verification of the debt… or the name and address of the original creditor and a copy is mailed to the consumer.

36.     Terry fails to allege any facts showing that 1692g applies or when the "initial communication" with him in connection with the collection of the debt occurred.  Terry attaches three letters to his complaint, including a purported QWR, but he fails to allege sufficient facts from which the court can conclude when Terry allegedly provided any notice to BB&T.  Second Am. Compl. at Exs. 19 and 20.   The Complaint is totally devoid of any factual pleading explaining whether Terry notified BB&T within the 30 day period following the notice of debt (under 1692g(a)), and none of the letters indicate whether Terry is disputing the debt or a portion of the debt or whether Terry is seeking the name and address of the original creditor.  Further, Terry does not plead that BB&T continued to collect the debt before BB&T obtained verification of the debt or the name/address of the original creditor and mailed that information to Terry.  Terry does not plead that BB&T failed to respond to any alleged request for the name/address of

4843-2608-4416 v6
2814465-000515

the original creditor or an alleged dispute of the debt.  To the contrary, Terry only pleads that BB&T failed to respond to the QWR in the "manner or means prescribed by FDCPA."  See Second Am. Compl., ¶ 160.  This pleading does not state a violation of 1692g because there is no requirement in FDCPA regarding responses to QWRs, which are governed by RESPA, not the FDCPA. Further, this pleading is wholly conclusory in that it fails to explain how the alleged response was not "in the manner or means prescribed by the FDCPA 1692g."

37.     Terry pleads that he confirmed that BB&T and Mackie received the QWR on or about June 24, 2016, and that BB&T responded three times to Terry's QWR,  but Terry alleges each response was an attempt to collect the debt and was "substantively deficient" under 1692g. *Id.* at ¶ 163.  Terry, however, fails to plead how the responses were allegedly deficient or how the responses constituted an attempt to collect a debt.  *Id.*  Terry also fails to allege any facts from which the court could conclude that BB&T conducted any prohibited collection activity. Further, section 1692g does not deal with credit reporting.

38.     Terry further pleads, without any factual development, that he is entitled to recover for 6 violations of 1692j, presumably 3 alleged violations by BB&T.  See Second Am. Compl., ¶¶ 163-164.  Section 1692j prohibits furnishing any form knowing that the form would be used to create the false belief in a consumer that a person other than the creditor is participating in the collection of a debt, when in fact such person is not so participating.  Terry not only fails to plead any facts to support a violation of 1692j, his pleading affirmatively undermines this claim, as the Note is endorsed to BB&T, as discussed above. Accordingly, Terry cannot state any plausible claim arising out of 1692j.

**G.      To the extent asserted, any RESPA claim must be dismissed for failure to state a claim.**

4843-2608-4416 v6
2814465-000515

39. Terry asserts that he sent a Qualified Written Request ("QWR") to defendants seeking validation of the debt. Second Am. Compl. at ¶ 201. Terry does not plead that BB&T failed to respond to the QWR, and instead pleads that BB&T's response was not "in accordance with the FDCPA." *Id.* at ¶¶ 160, 163. RESPA controls the requirements for a servicer to respond to a QWR.[46] Terry fails to plead any facts from which the court could conclude that BB&T violated RESPA's requirements related to responding to a QWR. For this reason alone Terry fails to state a claim under RESPA.

40. Further, a plaintiff must allege actual damages resulting from a violation of Section 2605, the section applicable to QWRs.[47] In *Hurd v. BAC Home Loans Servicing*, the Court dismissed a plaintiff's RESPA claim because the plaintiff failed to state any facts giving rise to a reasonable inference that she suffered actual damages from the alleged violation of RESPA.[48] Likewise, Terry fails to allege how BB&T's alleged failure to respond or failure to respond "substantively" to a QWR caused him any actual damages, including any alleged injury to his creditworthiness or mental anguish. Thus, Terry's RESPA claim, if any, must be dismissed.

**H. Terry's declaratory claim must be dismissed because he does not have a viable underlying cause of action.**

41. Terry requests the court to enter a declaratory judgment permanently enjoining all defendants from asserting any adverse claim to the Property and voiding the Deed of Trust. Second Am. Compl. at ¶¶ 189-190. Terry also requests a declaratory judgment that Defendants

---

[46] 12 U.S.C. § 2605(e).
[47] 12 U.S.C. § 2605(f)(1)(A); *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp.2d 747 (N.D. Tex. 2012).
[48] *Hurd*, 880 F. Supp.2d at 768-69.

"have formally waived any objection to [Promissory Note] by their failure or refusal to identify any defect therein and by their unlawful conversion/civil conspiracy." *Id.* at ¶ 198.[49]

42.     A request for declaratory judgment, absent a viable cause of action supporting entry of judgment, is fatally defective and fails.[50]  Federal courts have broad discretion to grant or refuse declaratory judgment.[51]  Moreover, the Fifth Circuit has long held that both the Texas and Federal Declaratory Judgment Acts are remedial only and "do not create any substantive rights or causes of action."[52]  Because Terry's claims fail, Terry's request for declaratory judgment is not supported by a viable cause of action and his request for declaratory judgment fails.[53]

## IV.     Conclusion

43.     For all of the foregoing reasons, Terry fails to state any claim upon which relief may be granted against BB&T, Baker Donelson, Mr. Bible or Ms. Robinson.  BB&T requests the court to grant this motion and dismiss Terry's Second Amended Complaint in its entirety, with prejudice, as Terry has had three opportunities to plead his claims and still fails to state any plausible claim.

---

[49] Terry also seeks a judicial determination of the rights, obligations and interest of the parties with regard to the Property, a determination of whether any Defendant has authority to foreclose on the Property, a decree declaring plaintiff is entitled to the exclusive possession of the Property, a decree declaring plaintiff owns fee simple in the Property, and a decree declaring that defendants have no estate, right, title, lien, or interest in or to the Property. Second Am. Compl. at ¶¶ 193-197.

[50] *Butanaru v. Ford Motor Co.*, 84 S.W.3d 298, 210 (Tex. 2002); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources*, 99 F.3d 746, 752 n.3 (5th Cir. 1996)(citing *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1302 (5th Cir. 1993)).

[51] *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Circ. 1991); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.")

[52] *Sid Richardson Carbon & Gasolin Co.*, 99 F.3d at 752 n.3 (citing *Exxon Corp.*, 4 F.3d at 1302); *see also Turner v. AmericaHomeKey Inc.*, No. 3:11-cv-0860, 2011 WL 3606688, *5-6 (N.D. Tex. Aug. 16, 2011) ("The Act, itself, is merely a procedural vehicle permitting a party to obtain judicial review of a controversy arising under other substantive law.")

[53] None of Terry's other causes of action relate to the declarations sought.

Respectfully submitted,

By: */s/ Kari Robinson*
     **Kari Robinson**
     Texas Bar No. 24004891
     **Kali M. Hyde**
     Texas Bar No. 24083234
     **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
     1301 McKinney Street, Suite 3700
     Houston, Texas 77010
     (713) 650-9700 – Telephone
     (713) 650-9701 – Facsimile
     klrobinson@bakerdonelson.com
     khyde@bakerdonelson.com

     **ATTORNEYS FOR DEFENDANTS BB&T**

**Of Counsel:**

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 - Telephone
(713) 650-9701 - Facsimile

## CERTIFICATE OF SERVICE

       I certify that a true and correct copy of the foregoing document has been served upon all counsel of record via the ECF filing system and on Plaintiff by certified mail return receipt requested and regular mail, pursuant to the Federal Rules of Civil Procedure on January 17, 2017.

Winston Avery Terry       **VIA CM,RRR#7014 2870 0000 2456 9580**
14505 Joy Lee Lane                        **& Regular U.S. Mail**
Manor, Texas 78653

Mark Douglas Cronenwett
Mackie Wolf Zientz & Mann, P.C.
14160 N. Dallas Parkway, Suite 900
Dallas, TX 75254

*/s/ Kari Robinson*
Kari Robinson

4843-2608-4416 v6
2814465-000515